# EXHIBIT 5

CHRIS DEROSE
Clerk of the Superior Court
By Jennifer Ford, Deputy
Date 09/13/2018 Time 16:27:58

| Description | Amount |
|---|---|
| ——— CASE# CV2018-005531 ——— | |
| CIVIL NEW COMPLAINT | 333.00 |
| | |
| TOTAL AMOUNT | 333.00 |
| Receipt# 26800715 | |

**SURRANO LAW OFFICES**
Attorneys at Law

7114 E. Stetson Dr., Suite 300
Scottsdale, Arizona 85251
Phone: (602) 264-1077
Fax: (602) 264-2213

Charles J. Surrano III (007732) cjs@surranolawfirm.com
John N. Wilborn (013714) jnw@surranolawfirm.com
AZTurboCourt e-service distribution: surranolaw@gmail.com
Attorneys for Plaintiff

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

PATRICIA BUGHER FAMILY
PARTNERSHIP, LLLP, a limited liability
partnership,

        Plaintiff,

    vs.

TRANSAMERICA OCCIDENTAL LIFE
INSURANCE COMPANY, a Foreign
Insurer

        Defendant.

Case No.: CV2018-005531

**COMPLAINT**

    Plaintiff Patricia Bugher Family Partnership LLLP, ("Bugher") for its Complaint

against Defendant Transamerica Occidental Life Insurance Company

("Transamerica"), state as follows:

    1.    This is an action brought on behalf of Bugher, owner of a life insurance

policy issued by Transamerica.

    2.    That the insured is Patricia Bugher who received information and

marketing of the policy while in Arizona and purchased the policy while in Arizona,

and who is an Arizona resident.

1



3.     That Bugher was created by Patricia Bugher for the purposes of owning the insurance policy.

4.     That Transamerica is a foreign insurance company that is licensed to do business of insurance in the State of Arizona.

5.     That Transamerica has inequitably increased the premiums in violation of the plan terms of the Bugher insurance policy.

6.     That the Bugher insurance policy ("the Policy") is one of a product line issued by Transamerica, and features flexible-premium, universal life ("FL") policies. The key features of UL policies are that they allow policyholders to pay the minimum amount of premiums necessary to keep the policies in force. This feature differs from other kinds of whole life insurance policies that require fixed monthly premium payments.

7.     That in contrast, owners of these types of FL policies, like Bugher, need only pay an amount sufficient to cover the COI charges and certain other specified expenses. This allows policyholders to minimize their capital investment in the policies and to generate greater rates of return through investments *other than* the UL insurance product.

8.     That any optional premium amounts Bugher might pay (in excess of COI charges and expense components) are applied to a policy's "Accumulation Value", sometimes known as "policy account value" or "cash value". These excess premiums earn interest at a guaranteed minimum rate, in this case no less than 3% annually.

9.     That Transamerica expressly markets to policyholders by utilizing marketing of the policies as "guaranteed maximum monthly deduction rates".

10.    That the policy states that the premium payments are subject to the "Premium Limitation" found in the policy.

1      11.    That the premium rates charged to policyholders are calculated and set by

2 subtracting the "guaranteed maximum monthly deduction rates," from the gross

3 premium paid and with other deductions leaving the Accumulation Value that will then

4 bear interest.

5      12.    That monthly deduction rates are the amounts subtracted from the

6 premium for services and fees, but these deductions must fall within the guaranteed

7 maximum rates found in the policy for each year.

8      13.    That the Monthly Deduction Rates are based on a set of criteria

9 determined at the time the policy is issued and relied on by both parties.

10      14.    That the Policy limits the criteria to include only: the face amount of the

11 policy; the insured's sex; the insured's smoker or non-smoker status; the insured's class

12 of risk for the Base Policy; the number of years the policy is in force; and, the insured's

13 age on the policy inception date.

14      15.    That the Policy also states that any change to the Monthly Deduction Rate

15 will be prospective only and will be subject to Transamerica's expectations as to future

16 cost factors. Such cost factors may include but are not limited to: mortality; expenses;

17 interest; persistency; and any applicable federal, state and local taxes.

18      16.    That the first page of the Transamerica policy contains a boldface title

19 calling the policy a "Adjustable Life Insurance Minimum Premium Requirement

20 Flexible Premiums Payable Thereafter."

21      17.    That the AL policy program was very competitively priced and was

22 marketed to higher income persons, like Patricia Bugher.

23      18.    That on January 24, 2007, Bugher purchased and Transamerica issued

24 Policy number 00060137245 with a face amount of $1million. The insured is Patricia

25 Bugher and the owner of the policy is Bugher.

26

19.    That Transamerica would issue annual illustrations for the cash or account value and the annualized premiums for the upcoming 12 month cycle.

20.    That Transamerica knew that the prospectus and the annual illustrations would be relied upon by Bugher.

21.    That the annual updates were misleading because Transamerica knew or had reason to know that they were not an accurate illustration of the account or cash value of the AL policies.

22.    That Transamerica had no actuarial data on which to base the prospectus or the annualized illustrations for the premiums.

23.    That all life insurance companies perform actuarial studies to underwrite the risk that they intend to sell to customers like Bugher.

24.    That for Transamerica to market and sell policies without such actuarial studies is reckless and any such policies are sold to the public are substantially different than the promises offered to those customers.

25.    That Transamerica knew it was selling a defective and deficient product to the public and Bugher.

26.    That the annualized premium on the date of issue was $43,974.

27.    That the annualized premium decreased to $55,884 in March of 2010.

28.    That the annualized premium increased to $62,400 in February of 2011.

29.    That in October of 2017 the annualized premium increased to $168,000.

30.    That the exorbitant increase is not based on any contractual right that allows Transamerica to increase the annualized premium.

31.    That Transamerica knew or should have known that the AL policy program was not sustainable at the initial marketed premium rates and it was going to raise the annualized premium in exorbitant amounts.

32. That the exorbitant rate increases or their inevitability were never disclosed to Bugher.

33. That although Transamerica markets the AL policy products specifically to policyholders seeking to minimize their premium payments and keep policy account values as low as possible, Transamerica has now sought to deprive policyholders who have exercised their option, of their insurance policies or otherwise make policyholders pay exorbitant and extortionate premiums to keep the policy in force.

34. That Transamerica imposed drastic premium increases on policyholders, like Bugher, whom exercise their contractual rights to keep their accumulated policy account values as low as possible and pay flexible premiums.

35. That the premium increases imposed are contrary to the express and implied contractual limitations, exorbitant, unreasonable and pre-textual.

36. That the result of this wrongful program requires that policyholders are required to either allow the policy to lapse after paying years of premiums, or pay extortionate amounts of premium payments to keep the policy in force.

37. That under either scenario, Transamerica will reap huge profits at the expense of its policyholders, like Bugher.

38. That the actual reason for the increase in premium does not fall within the enumerated or express provisions of the Policy.

39. That Transamerica knew at the time it rolled out the AL policies that it had no reasonably reliable underwriting criteria to either create or support actuarial expectations or support its marketing.

40. That Transamerica priced the AL policies competitively to compete with other insurance companies who were offering similar products.

41. That Transamerica knew or had reason to know that the pricing was not reasonable at the time it offered the AL policies

42.     That Transamerica intended that Bugher would rely on the pricing models and the accumulated balance value projections, as well as the annualized premium outlay projections.

43.     That Bugher relied on the unsupported projections and initial illustrations to purchase the defective and deficient Policy.

44.     That the unsupported illustrations were material to Bugher's decision to purchase the policy.

45.     That had Transamerica disclosed its intent to increase the premiums by an exorbitant amount and unreasonably higher than any prospectus, Bugher would never have purchased the Policy.

## COUNT ONE: CONSUMER FRAUD A.R.S. §44-1521 et seq.

46.     That Bugher reasserts and realleges each and every allegation set for herein as if more fully set forth within Count One of Plaintiffs' Complaint.

47.     That the Defendant's life insurance policy is "merchandise" as that word is used in the Arizona Consumer Fraud Act.

48.     That Transmerica's marketing documents created and used constitutes "advertising" as that word is used in the Arizona Consumer Fraud Act.

49.     That Transamerica represented and/or advertised the insurance policy in a way that caused Plaintiffs to reasonably believe that they were purchasing a variable premium life insurance policy and that, although the premiums were subject to change from year to year, that change would not be so exorbitant to become unsustainable.

50.     That Transamerica, through its actions, omissions and limitations, and advertising, led Bugher to believe that Transamerica was selling a properly vetted and underwritten product, when, in fact Transamerica did neither.

51.     That the Transamerica's AL policy program that it advertised, without proper actuarial and underwriting, was unsustainable at the time it was marketed to Bugher.

52.     That Bugher made all the premiums payments as of the date of the filing of this Complaint and has been damaged thereby.

53.     That Transamerica made the aforementioned material affirmative misrepresentations and omissions that were reasonably relied on by Bugher to its detriment, and caused it to purchase insurance that met neither its needs nor its expectations

54.     That Bugher relied on the aforementioned material misrepresentations and omissions that induced it to purchase the policy and to continue to pay premiums on the policy for many years to its ultimate detriment.

55.     That as a direct and proximate result of the conduct as alleged, Bugher has been injured and damaged.

56.     That the conduct of Transamerica in leading Bugher to believe it would be able to sustain reasonable premium payments and that its illustrations were accurate, constitutes a violation of the Consumer Fraud Act.

57.     That because these actors acted with a conscious disregard for the likelihood that harm would result, Bugher entitled to an award of punitive damages.

## COUNT TWO: MISREPRESENTATION

58.     That Bugher hereby repeats and re-alleges each and every allegation of the foregoing Complaint as though more fully set forth herein.

59.     That Transamerica, through acts more specifically set forth herein above, was either negligent or reckless in misrepresenting coverage to Bugher; failing to properly underwrite the AL program and failing to fully disclose the lack of actuarial analysis; and using misleading premium and cash value projections.

1    60.    That by offering this AL life insurance policy, Transamerica should have

2    given fair warning that such coverage was not properly underwritten and that the

3    premiums could and would skyrocket.  Instead, Transamerica either negligently or

4    recklessly withheld important information about how risky this life insurance policy

5    actually was.

6    61.    That Transamerica's errors and omissions have caused damage to Bugher

7    who purchased the policy relying on statements, omissions and representations of what

8    the coverage offered and what could be an expected and acceptable risk of premium

9    increase.

10    62.    That as a direct and proximate result of these acts and omissions and the

11    misrepresentation of  Transamerica, it is responsible for all damages and injuries caused

12    thereby.

13    63.    That the conduct of Transamerica in leading Bugher to believe it would be

14    able to sustain reasonable premium payments and that its illustrations were accurate,

15    constitutes a violation of the Consumer Fraud Act.

16    64.    That because these actors acted with a conscious disregard for the

17    likelihood that harm would result, Bugher entitled to an award of punitive damages

18    **COUNT THREE: BREACH OF CONTRACT**

19    65.    That Plaintiff hereby repeats and re-alleges each and every allegation of

20    the foregoing Complaint as though more fully set forth herein.

21    66.    That the Policy at issue is a contract.

22    67.    That Transamerica's actions constitute a breach of contract.

23    68.    That Bugher has been damaged by the breach.

24    69.    That Bugher is entitled to all those damages caused by Transamerica and

25    attorney's fees and costs pursuant to A.R.S §12-341.01.

26

1    WHEREFORE, Plaintiff requests judgment against the Defendant and in favor of

2 Plaintiff as follows:

3    A.    For an amount of special damages to be determined at trial;

4    B.    For an amount of general damages to be determined at trial;

5    C.    For an amount of punitive damages sufficient to punish Transamerica and

6          to deter future similar conduct and to deter it and other likeminded

7          insurance companies of similar conduct in the future;

8    D.    For attorneys' fees incurred;

9    E.    For taxable costs incurred; and

10   F.    For other just and further relief as this Court deems proper on the

11         premises.

12   DATED this 17th day of September, 2018.

13                                    SURRANO LAW OFFICES

14                                    By:

15                                       Charles J. Surrano, III
16                                       John N. Wilborn
17                                       Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

9